**SO ORDERED.**

**SIGNED this 25 day of June, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

IN RE:

ERIN ENTERPRISES, LTD.,                         CASE NO. 12-02718-8-JRL

    DEBTOR.                                              CHAPTER 11

ERIN ENTERPRISES, LTD.,
    PLAINTIFF,
                                                ADVERSARY PROCEEDING
    v.                                          NO.  13-00033-8-JRL

PRESIDENTIAL BANK, FSB,
    DEFENDANT.

## ORDER

This matter came before the court on Presidential Bank, FSB's ("Presidential" or "defendant") motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A hearing was held on the matter on June 4, 2013, in Raleigh, North Carolina.

The plaintiff filed for protection under chapter 11 of the Bankruptcy Code on April 6, 2012. Previously, the plaintiff had filed for protection under chapter 11 on March 15, 2010.[1] The debtor's plan of reorganization in the previous case was confirmed and the case closed on November 24,

---

[1] Case No. 10-01999-8-JRL.

2010. On February 13, 2013, the plaintiff filed the instant adversary proceeding against the defendant alleging an automatic stay violation from a previous bankruptcy case and a fraudulent transfer under 11 U.S.C. § 548. On March 18, 2013, the defendant filed the motion to dismiss which is currently before the court.

## BACKGROUND[2]

The plaintiff is a North Carolina corporation doing business in Wake County, North Carolina. On October 3, 2006, the plaintiff purchased real property at 2809 Avent Ferry Road in Raleigh, North Carolina (the "property") from Norman K. Stanley. After the purchase, the plaintiff began marketing the property. The plaintiff's intent was to find an investor willing to hire Vernon Jay Vernon, the owner of the plaintiff, to construct residential rental facilities on the property.[3] Mr. Vernon was successful in finding an investor. Forward Observer, Inc. ("Forward Observer"), owned by Jamleck Mburu, agreed to purchase the property from the plaintiff and hire Mr. Vernon to construct apartments on the property.

To finance the construction, Mr. Mburu sought to procure a construction loan from First Mount Vernon Industrial Loan Association ("FMV").[4] Pursuant to the loan agreement, FMV required that the property be transferred to a limited liability company which would be majority-

---

[2]These facts are a fair recitation of the complaint, which is viewed in a light most favorable to the non–moving party, the plaintiff. GE Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)).

[3]Mr. Vernon, a general contractor licensed in North Carolina, regularly enters into such arrangements where individuals and businesses buy real property which he or his businesses own with the agreement that he will act as the general contractor to construct the rental facilities thereon.

[4]FMV is a Virginia corporation which operates as a commercial lender.

owned by FMV and minority-owned by Mr. Mburu and Forward Observer. The name of this company was to be "PRODEV XLIII, LLC."

On May 9, 2007, Mr. Vernon executed a contractor agreement with Forward Observer, agreeing to construct apartments on the property for a fixed contract price of $2.4 million. Half of the contract price was to be paid in progress payments, with the final half due upon completion.

On July 3, 2007, in furtherance of the agreements outlined above, the plaintiff transferred the property to a company called "PRODEV LXIII, LLC" by way of a general warranty deed (the "first transfer"). The deed was filed on July 10, 2007 with the Wake County Register of Deeds in Book 12647, Page 1485. At the closing of the first transfer, some of the loan proceeds received by Forward Observer from FMV were used to pay off the outstanding mortgage notes, held by Stanley, to which the plaintiff was the obligor. At the time of the first transfer, and since, there has not existed a legal entity in North Carolina or Virginia with the name "PRODEV LXIII, LLC."

Contemporaneous to the first transfer, on July 3, 2007, Mr. Mburu and Forward Observer, through PRODEV XLIII, LLC, executed a promissory note (the "note") to FMV for the repayment of a construction loan in the amount of $915,000.00. The note was secured by a deed of trust executed on that same day and filed with the Wake County Register of Deeds in Book 12647, Page 1489. The deed of trust was intended to secure the property as collateral for the repayment of the promissory note.[5] FMV assigned its interest in the note to the defendant on September 22, 2008,[6] but continued to service the note and take actions consistent with the interests of the defendant.

Mr. Vernon constructed the apartments; however, Mr. Mburu and Forward Observer did not

---

[5]The plaintiff transferred the property to PRODEV LXIII, LLC while the promissory note and deed of trust were executed in the name of PRODEV XLIII, LLC.

[6]This assignment was recorded in Book 13249, Page 601 of the Wake County Registry.

3

make payments under the note. After PRODEV XLIII, LLC defaulted on note payments, FMV contracted with Mr. Vernon to manage the property while FMV decided how to dispose of the property. At some point in 2010, FMV recognized that the property was purportedly owned by PRODEV LXIII, LLC, while the note and deed of trust were held by PRODEV XLIII, LLC.

On April 19, 2010, FMV filed a document titled "North Carolina Correction General Warranty Deed" with the Wake County Register of Deeds.[7] The correction document referenced the prior deed from the plaintiff to PRODEV LXIII, LLC and purported to transfer the property again. This time, the transfer was from the plaintiff to PRODEV XLIII, LLC (the "second transfer") but filed by FMV. The second transfer occurred roughly a month after the plaintiff filed its first chapter 11 petition on March 15, 2010, without notice to the plaintiff's bankruptcy counsel, and without notice to or approval of the bankruptcy court.

A receiver was appointed to dispose of the property and a foreclosure proceeding initiated. On February 9, 2012, the property was foreclosed upon. The high bidder at the sale was the defendant, which bid $697,000.00 for the property. Subsequently, the defendant assigned its bid to The Carolina FMV Property Trust, Ltd., for a price of $697,000.00.

## DISCUSSION

### A.   Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires every pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. A party may move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss a complaint for failure to state a claim upon which relief can

---

[7] At Book 13911, Page 2386.

be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). To demonstrate entitlement to relief and survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (internal citations, quotation marks and brackets omitted). The veracity of well–pleaded allegations in the complaint will be assumed in determining "whether they plausibly give rise to an entitlement to relief." Angell v. BER Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009) (citation omitted).

### B.    Violation of the Automatic Stay

In its complaint, the plaintiff first brings a cause of action for a violation of the automatic stay imposed by 11 U.S.C. § 362. The plaintiff alleges that the second transfer, which occurred on April 19, 2010 was made in violation of the stay in place in the debtor's first chapter 11 proceeding. The plaintiff goes on to allege that because the transfer was made in violation of the stay, the transfer is void or voidable and that the plaintiff is entitled to recover either the property or the value of the property from the defendant. The plaintiff contends that the value of the property is $697,000.00 as that is what the defendant received for the assignment of its winning foreclosure bid to The Carolina FMV Property Trust, Ltd.

In its motion to dismiss, the defendant argues that the plaintiff has failed to state a claim for

5

which relief can be granted as the actions of which the plaintiff complains were not taken by the defendant. At the hearing, the defendant added that the complaint should be dismissed because the plaintiff has not and cannot challenge the completed foreclosure sale in this court.[8]

The first inquiry is whether the property was part of the estate at the time of the first bankruptcy. While FMV attempted to transfer, by general warranty deed, the property to an LLC, it failed to list the name of the grantee-LLC correctly. The name listed was PRODEV LXIII, LLC rather than PRODEV XLIII, LLC. To be operative as a conveyance, a deed must designate as grantee a living or legal person. Gifford v. Linnell, 579 S.E.2d 440, 442 (N.C. Ct. App. 2003). While a misnomer in the name of a corporate grantee where the deed substitutes "inc." for "company" does not necessarily render the conveyance void, Tomika Investments, Inc. V. Macedonia True Vine Pentecostal Holiness Church of God, Inc. 524 S.E.2d 591, 594 (N.C. Ct. App. 2000), that was not the mistake here. Here, the deed transposed two roman numerals in the grantee's name such that the deed purported to transfer title to an LLC that did not exist. If the transfer was ineffective, the property would still be property of the debtor. Based on the facts recited in the complaint, it is plausible that the property was part of the estate as of the first bankruptcy petition date in March 2010.

The facts as set forth in the complaint sufficiently allege that FMV was acting on behalf of the defendant. FMV assigned its rights under the promissory note to the defendant in 2008 but continued to service the note. FMV's actions were consistent with the defendant's interest. The defendant was the secured party at all relevant times as it held the note and deed of trust during the pendency of both bankruptcy proceedings.

---

[8]While recovery of the actual property may not be warranted in this situation, the court has the ability to award monetary damages.

Upon the filing of a petition under section 301, 302, or 303 of the Bankruptcy Code, all entities are stayed from eight enumerated actions listed in section 362(a). Relevant to this case, all entities are stayed from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362 provides a private cause of action for individuals injured by willful violation of the automatic stay. Such individuals may "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1); see Pettit v. Baker, 876 F.2d 456 (5th Cir. 1989) (holding that the subsection creates a private remedy for one injured by a willful violation of an automatic stay); see also Budget Serv. Co. V. Better Homes of Virginia, Inc., 804 F.2d 289 (4th Cir. 1986) (determining that the use of the word "individual" in the subsection does not limit the remedy to natural persons but includes corporate debtors); Koffman v. Osteoimplant Technology, Inc., 182 B.R. 115, 124 (D. Md. 1995) ("the remedy [under section 362(k)] is available even after the bankruptcy proceedings have terminated").

In its complaint, the plaintiff alleges that the property was part of the bankruptcy estate when FMV, on behalf of the defendant, attempted to transfer the property to PRODEV XLIII, LLC on April 19, 2010. The stay was in place starting on March 15, 2010 when the plaintiff filed its chapter 11 petition. The facts pleaded plausibly give rise to an entitlement to relief for a violation of the automatic stay. Accordingly, the defendant's motion to dismiss the first cause of action is denied.

### C.   Fraudulent Transfer under 11 U.S.C. § 548

The second cause of action that the plaintiff brings alleges a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). The plaintiff alleges that the second transfer was made to the defendant for less than reasonably equivalent value, that the debtor was insolvent at the time of the second transfer, and that the value of the property is $697,000.00, as received by the defendant for the

assignment of its winning foreclosure bid.

Section 548(a) of the Bankruptcy Code permits the trustee[9] to avoid a "transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition," provided that the transfer involved either actual or constructive fraud. 11 U.S.C. § 548(a). The plaintiff seeks to avoid a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

Preliminarily, the court must consider, whether it is plausible that the transfer at issue involved an interest of the debtor and whether such transfer occurred on or within the two years before the filing of the petition. See 11 U.S.C. s. 548(a). The second transfer is alleged to have occurred on April 19, 2010 and the current bankruptcy was initiated on April 6, 2012; therefore, the facts allege that the transfer occurred within the two years prior to the bankruptcy's initiation. Second, similar to the threshold issue in the first cause of action alleging a violation of the automatic stay is the consideration of whether the transfer involved an interest of the debtor. See e.g., Begier v. IRS, 496 U.S. 53, 59 (1990) ("'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings"). Because the facts allege that the first transfer was ineffective in deeding the property to the proper LLC, it is plausible that the property, at the time of the second transfer, constituted an interest of the debtor.

Section 548 permits the trustee, or chapter 11 debtor, to avoid, based on a theory of constructive fraud, any transfer of an interest of the debtor within two years of the filing of the petition, provided the debtor "received less than a reasonably equivalent value in exchange for such

---

[9] 11 U.S.C. § 1107(a) grants this power to a chapter 11 debtor in possession.

8

transfer" and the debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I). Value is defined in section 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." The Bankruptcy Code does not define "reasonably equivalent value." In re Morris Communications NC, Inc., 914 F.2d 458, 466 (4th Cir. 1990). The complaint alleges that the plaintiff did not receive reasonably equivalent value. The facts as stated in the complaint allege that upon realizing the first transfer was ineffective, FMV attempted to deed the property to PRODEV XLIII, LLC. There is no indication that the plaintiff received any value for this transfer.[10] The defendant argues that the plaintiff received value at the time the first deed was made. The plaintiff argues that no consideration was ever given or that the only consideration that the plaintiff received was when the loan closed, which was the time of the first transfer. At that time, the note held by Stanley was paid off. This amount, the plaintiff alleges, was inadequate when Presidential was paid $697,000.00 for the assignment of its winning foreclosure bid on the property. That value, $697,000.00 is what the plaintiff alleges was the property's value. The complaint plausibly alleges that the plaintiff received less than reasonably equivalent value.

The Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). Courts in the Fourth Circuit apply the "balance sheet test," to evaluate insolvency

---

[10] At the time of the closing of the first transfer, some of the loan proceeds from FMV where used to pay off the outstanding mortgage note, held by Stanley, to which the plaintiff was the obligor. However, the plaintiff did not receive this value in exchange for the second transfer.

under § 548, which "involves the comparing of the fair market value of the debtor's assets at the time of the transaction with the debtor's liabilities on the same date." Ruby v. Ryan (In re Ryan), 472 B.R. 714, 727 (Bankr. E.D.Va. 2012). The defendant does not raise issue with the plaintiff's assertion that the plaintiff was insolvent at the time of the bankruptcy. At the time of the transaction, the plaintiff was a chapter 11 debtor. A review of the plaintiff's schedules from the first bankruptcy, which is referenced by case number in the complaint, shows that at the time of filing, the plaintiff's liabilities greatly outweighed its assets. The filing date was roughly a month before the second transfer occurred. Accordingly, the court finds that the complaint plausibly asserts that the plaintiff was insolvent at the time of the transfer.

Because the facts allege that the second transfer was made within two years of the bankruptcy petition date, that the transfer was of an interest of the plaintiff, that the plaintiff received less than reasonably equivalent value, and that the plaintiff was insolvent at the time of the transfer, the complaint plausibly states a claim for relief under section 548 of the Bankruptcy Code. Accordingly, the defendant's motion to dismiss the second cause of action is denied.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED**.

**END OF DOCUMENT**