**SO ORDERED.**

**SIGNED this 12 day of June, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| **ERIN ENTERPRISES, LTD.,** | **CHAPTER 11** |
| | **CASE NUMBER: 12-02718-8-RDD** |
| DEBTOR | |
| | |
| **ERIN ENTERPRISES, LTD.,** | **ADVERSARY PROCEEDING** |
| | **NUMBER: 13-00033-8-RDD** |
| PLAINTIFF, | |
| v. | |
| **PRESIDENTIAL BANK, FSB,** | |
| DEFENDANT. | |

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Defendant's Motion for Summary Judgment and Memorandum of Law in Support filed by Presidential Bank, FSB (the "Defendant") on December 23, 2013 and the Plaintiff's Motion for Summary Judgment and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment filed by Erin Enterprises, Ltd. (the "Plaintiff") on

February 3, 2014. The Court conducted a hearing on April 16, 2014, in Greenville, North Carolina to consider this matter.

## STATEMENT OF THE FACTS

The Plaintiff is a North Carolina corporation doing business in Wake County, North Carolina. On October 3, 2006, the Plaintiff purchased real property located at 2809 Avent Ferry Road in Raleigh, North Carolina (the "Property") from Norman K. Stanley. After the purchase, the Plaintiff began marketing the Property. The Plaintiff's intent was to find an investor willing to hire Vernon Jay Vernon, the owner of the Plaintiff, to construct residential rental facilities on the Property[1]. Mr. Vernon was successful in finding an investor. Forward Observer, Inc. ("Forward Observer"), owned by Jamleck Mburu, agreed to purchase the Property from the Plaintiff and hire Mr. Vernon to construct apartments on the Property.

To finance the construction, Mr. Mburu sought to procure a construction loan from First Mount Vernon Industrial Loan Association ("FMV")[2]. Pursuant to the loan agreement, FMV required that the Property be transferred to a limited liability company which would be majority-owned by FMV and minority-owned by Mr. Mburu and Forward Observer. The name of this company was to be "PRODEV XLIII, LLC."

On May 9, 2007, Mr. Vernon executed a contractor agreement with Forward Observer, agreeing to construct apartments on the Property for a fixed contract price of $2.4 million. Half of the contract price was to be paid in progress payments, with the final half due upon completion.

---

[1] Mr. Vernon, a general contractor licensed in North Carolina, regularly enters into such arrangements where individuals and businesses buy real Property which he or his businesses own with the agreement that he will act as the general contractor to construct the rental facilities thereon.

[2] FMV is a Virginia corporation which operates as a commercial lender.

On July 3, 2007, in furtherance of the agreements outlined above, the Plaintiff transferred the Property to a company called "PRODEV LXIII, LLC" by way of a general warranty deed (the "Original Deed") which consummated a transfer between the parties (the "Original Transfer"). The Original Deed was filed on July 10, 2007 with the Wake County Register of Deeds in Book 12647, Page 1485. At the closing of the Original Transfer, some of the loan proceeds received by Forward Observer from FMV were used to pay off the outstanding mortgage notes, held by Stanley, to which the Plaintiff was the obligor. At the time of the Original Transfer, and since, there has not existed a legal entity in North Carolina or Virginia with the name "PRODEV LXIII, LLC."

Contemporaneous to the Original Transfer, on July 3, 2007, Mr. Mburu and Forward Observer, through PRODEV XLIII, LLC, executed a promissory note (the "Note") to FMV for the repayment of a construction loan in the amount of $915,000.00. The Note was secured by a deed of trust executed on that same day and filed with the Wake County Register of Deeds in Book 12647, Page 1489. The deed of trust was intended to secure the Property as collateral for the repayment of the promissory note[3]. FMV assigned its interest in the Note to the defendant on September 22, 2008[4], but continued to service the Note and take actions consistent with the interests of the defendant.

Mr. Vernon constructed the apartments. However, Mr. Mburu and Forward Observer did not make payments under the Note. After PRODEV XLIII, LLC defaulted on Note payments, FMV contracted with Mr. Vernon to manage the Property while FMV decided how to dispose of the

---

[3] The Plaintiff transferred the Property to PRODEV LXIII, LLC while the promissory note and deed of trust were executed in the name of PRODEV XLIII, LLC.

[4] This assignment was recorded in Book 13249, Page 601 of the Wake County Registry.

Property. At some point in 2010, FMV recognized that the Property was purportedly owned by PRODEV LXIII, LLC, while the note and deed of trust were held by PRODEV XLIII, LLC.

On April 19, 2010, FMV filed a document titled "North Carolina Correction General Warranty Deed" with the Wake County Register of Deeds (the "Correction Deed")[5]. The Correction Deed filed by FMV referenced the Original Transfer by the prior deed from the Plaintiff to PRODEV LXIII, LLC and purported to correct the defect in the title of the grantee to PRODEV XLIII, LLC. The Correction Deed was filed roughly a month after the Plaintiff filed its first chapter 11 petition on March 15, 2010, without notice to the Plaintiff's bankruptcy counsel, and without notice to or approval of the bankruptcy court.

A receiver was appointed to dispose of the Property and a foreclosure proceeding initiated. On February 9, 2012, the Property was foreclosed upon. The high bidder at the sale was the defendant, which bid $697,000.00 for the Property. Subsequently, the defendant assigned its bid to The Carolina FMV Property Trust, Ltd., for a price of $697,000.00. On April 6, 2012, the Plaintiff filed the current Chapter 11 bankruptcy petition.

## DISCUSSION

In the instant case, both the Plaintiff and the Defendant seek summary judgment. Summary judgment is proper if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate.

---

[5] At Book 13911, Page 2386.

In its complaint, the Plaintiff first brings a cause of action for a violation of the automatic stay imposed by 11 U.S.C. § 362. The Plaintiff alleges that the Correction Deed, which was filed on April 19, 2010 was made in violation of the automatic stay in place in the debtor's first chapter 11 proceeding. The Plaintiff goes on to allege that the filing of the Correction Deed was in fact a transfer. The Plaintiff further alleges that because a transfer was made in violation of the stay, the transfer is void or voidable and that the Plaintiff is entitled to recover either the Property or the value of the Property from the Defendant. The Plaintiff contends that the value of the Property is $697,000.00 as that is what the Defendant received for the assignment of its winning foreclosure bid to The Carolina FMV Property Trust, Ltd.

On June 25, 2013, Judge Leonard denied the Defendant's motion to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court found that the facts alleged in the complaint plausibly gave rise to an entitlement to relief for a violation of the automatic stay and state a claim for relief under section 548 of the Bankruptcy Code.

Pursuant to its motion for summary judgment, the Plaintiff alleges that the Property, as of the petition date of the prior Chapter 11, was Property of the estate as contemplated by 11 U.S.C. §541, and that the act of filing the Correction Deed to consummate the correction in the name of the grantee was an act that allowed the Defendant to obtain the Property from the estate for the benefit of PRODEV XLIII, LLC, which in turn benefitted the Defendant by allowing it to perfect its deed of trust lien against the Property and subsequently foreclose on the Property to recoup losses on amounts owed the Defendant that were, because of the Correction Deed, secured by the Property. The Plaintiff requests that the Court find there are no genuine issues of material fact with respect

to whether the Correction Deed was in fact a transfer in violation of the automatic stay, that this transfer is voidable, and that judgment be entered in favor of the Plaintiff.

Pursuant to its motion for summary judgment, the Defendant contends that at the time the Plaintiff executed the Correction Deed, the Plaintiff had no legal or equitable interest in the Property due to the valid, Original Transfer, and that the filing of the Correction Deed was not a transfer. As a result, the Defendant contends, the procurement of the Correction Deed did not violate the automatic stay and summary judgment should be entered in favor of the Defendant.

The fundamental question before the Court is whether the Property was part of the estate at the time of the first bankruptcy. To make this determination, the Court must consider whether the Original Transfer effectively transferred the Plaintiff's interest in the Property. The determination of whether the Original Deed served to transfer ownership to PRODEV LXIII hinges on whether the incorrect name of the grantee was a latent defect or a patent defect in the title.

This question of whether a description creates a patent or latent ambiguity is a question of law for the court to decide. *Donald R. Mason v. Crescent State Bank, Deuce Investments, Inc. (In re Deuce Investments, Inc.)* AP No. 10-00155-8-RDD at 8. (Bankr. E.D.N.C. May 27, 2011) (citing *Brooks v. Hackney*, 326 N.C. at 171, 404 S.E.2d at 857-58). A patent ambiguity is one where there is such uncertainty on the face of the document that a court by "reading the language in the light of all the facts and circumstances *referred in the instrument*, is unable to derive *therefrom* the intention of the parties as to what land was to be conveyed." *Donald R. Mason v. Crescent State Bank, Deuce Investments, Inc. (In re Deuce Investments, Inc.)* AP No. 10-00155-8-RDD at 7. (Bankr. E.D.N.C. May 27, 2011) (citing *Brooks v. Hackney*, 326 N.C. at 171, 404 S.E.2d at 857-58). A description is said to be latently ambiguous if it is insufficient in itself to identify the property but refers to

something extrinsic by which identification might possibly be made. *Donald R. Mason v. Crescent State Bank, Deuce Investments, Inc. (In re Deuce Investments, Inc.)* AP No. 10-00155-8-RDD at 7. (Bankr. E.D.N.C. May 27, 2011) (citing *Lane*, 262 N.C. at 13, 136 S.E.2d at 273. Furthermore, "[a] patent ambiguity raises a question of *construction*; a latent ambiguity raises a question of *identity*."Id. ; see also *Electronic World, Inc. v. Barefoot*, 153 N.C. App. 387, 570 S.E.2d 225 (2002). Therefore, if a description is patently ambiguous, the deed or deed of trust is void since the document would fail to satisfy the basic deed construction requirements. However, when a latent ambiguity exists, consideration of evidence outside of the contract is "both competent and necessary" to determine the validity of the deed. *Lane*, 262 N.C. at 13, 136 S.E.2d at 273.

Generally, a court will try to uphold the validity of a deed, if possible. *Id.* (citing *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E.2d 889 (1939)). "North Carolina courts attempt to sustain a deed because by doing so, they are, in fact, affirming the intent of the parties to convey land, as without such transaction to convey real property, the parties would have been involved with each other to begin with." *Id.* (citing Webster, Hetrick, & McLaughlin, *supra,* § 10-37).

In the order denying the motion to dismiss mentioned above, the court noted:

> While FMV attempted to transfer, by general warranty deed, the Property to an LLC, it failed to list the name of the grantee-LLC correctly. The name listed was PRODEV LXIII, LLC rather than PRODEV XLIII, LLC. To be operative as a conveyance, a deed must designate a grantee [,] a living or legal person. *Gifford v. Linnell*, 579 S.E.2d 440, 442 (N.C. Ct. App. 2003). While a misnomer in the name of a corporate grantee where the deed substitutes "inc." for "company" does not necessarily render the conveyance void, *Tomika Investments, Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.* 524 S.E.2d 591, 594 (N.C. Ct. App. 2000), that was not the mistake here. Here, the deed transposed two roman numerals in the grantee's name such that the deed purported to

7

> transfer title to an LLC that did not exist. If the transfer was ineffective, the Property would still be Property of the debtor.

*Erin Enterprises, Ltd., v. Presidential Bank, FSB* (*In re Erin Enterprises, LTD.*) AP No. 13-00033-8-JRL at 6 (Bankr. E.D.N.C. June 25, 2014).

The North Carolina Supreme Court has addressed the issue of whether the deed to the plaintiff properly identified the plaintiff when the deed purported to transfer title to a corporation that did not exist in *Troy & North Carolina Gold Mining Company v. Snow Lumber Company*, 170 N.C. 273, 87 S.E. 40 (1915). There, the deed into the plaintiff was in the name of "Troy, N.Y. & North Carolina Gold Mining Company" rather than "Troy & North Carolina Gold Mining Company," the company's actual name. *Id.* There was no corporation named "Troy, N.Y. & North Carolina Gold Mining Company" doing business in North Carolina, and only the plaintiff, Troy & North Carolina Gold Mining Company, had a similar name in this state. *Id.* The North Carolina Supreme Court in *Troy* characterized the error in the description of Troy & North Carolina Gold Mining Company as a "misnomer or latent ambiguity which can be explained by parole evidence so as to fit the description to the person or corporation intended." The court stated that the typo in the name should not "vitiate, provided the identity of the corporation with that intended to be named by the parties is apparent." *Id*. at 42. Typos like this one are not uncommon because "[t]he name of a corporation frequently consists of several words, and an omission or alteration of several of them is not material." *Id*. at 42. The court in *Troy*, further noted that a latent ambiguity, like the identity of a corporate grantee that does not exist, can be clarified with parole evidence establishing the true identity of the intended grantee and that the error in the description of the grantee does not render the deed void. *Id*. at 42.

Additionally, the North Carolina Supreme Court held in *Asheville Div. No. 15 v. Aston*, that a deed is valid notwithstanding the erroneous description of the grantee. In *Asheville*, the deed at issue identified the grantee as "Asheville Division, No. 15" when the proper name for the grantee was "Asheville Division, No. 15, of the Sons of Temperance." *Asheville Div. No. 15 v. Aston*, 92 N.C. 578, 583-84 (1885). The court reasoned that a grant of land from an individual to a body corporate will be good, "if it can be clearly discovered from the terms of it, what corporate body is intended, though an omission or mistake in the corporate name may have been made." *Asheville Div. No. 15 v. Aston* at 583. A misnomer does not vitiate, provided the identity of the corporation with that intended by the parties is apparent. *Id.*

In the matter at hand, the transposition of the two roman numerals describes a limited liability company that does not exist thus creating a latent ambiguity which can be clarified by parole evidence. Rather than bringing a reformation action in order to resolve the latent ambiguity, the parties in the instant case instead executed the Correction Deed, the effect of which was not to transfer any interest in Property but merely to correct the public record as to the correct identity of the grantee under the Original Deed. In short, a latent ambiguity existed as to the intended grantee under the Original Deed which ambiguity was clarified by way of the Correction Deed. The Correction Deed is not a "second transfer" as alleged by the Plaintiff as Plaintiff had nothing to transfer at the time it executed the Correction Deed. It was, as it stated on th face of the Correction Deed, a correction of the erroneous name of the grantee. The Correction Deed provides:

> On July 10, 2007, the Grantor filed a general warranty deed purportedly conveying the [P]roperty. . . to ProDev LXIII, LLC, a Virginia limited liability company. Two Roman numerals in the name of the Grantee were inadvertently transposed. At the time of the conveyance and continuing since then through the date of execution of this instrument, no such company has existed in Virginia by the

9

>name of ProDev LXIII, LLC. The correct Grantee's name is ProDev XLIII, LLC.  This deed is being executed and recorded to correct the Grantee's name."

Wake County Register of Deeds at Book:013911  Page: 02386-02389.

The law in North Carolina is clear[6]. A deed is effective to convey title even if the grantee in the deed is misnamed. *Webster's Real Estate Law in North Carolina*, § 10.32.  The grantee, individual or corporation, may take ***even if misnamed***, or nicknamed, in the deed.  Thus, even though the Original Deed misidentified the grantee by transposing the "L" and the "X" in the grantee's name, the court finds that the Original Deed was effective to convey all of Plaintiff's interest in the Property to an actual (but misidentified) grantee, a position which is strongly supported by case law in North Carolina as set forth above.

---

[6] Plaintiff argues that the case law mentioned above is distinguishable from the facts in this case as the facts in the above cases were dealing with latent ambiguities in the instruments and the facts in the instant case deal with a patent ambiguity; however, the court does not agree.

Plaintiff agrees that North Carolina case law states that a patent ambiguity is one where there is such uncertainty on the face of the document that a court by "reading the language in light of all the facts and circumstances *referred in the instrument*, is unable to derive *therefrom* the intention of the parties as to what land was to be conveyed." Plaintiff states, "simply put, there is nothing in the [Original Deed]... that would indicate that ProDev LXIII, LLC was not the intended grantee and there is also nothing on the public record that would allow a person conducting a diligent grantor and grantee search to determine that the deed of trust had been entered against the property by another entity." *Memoranda in Opposition to Defendant's Motion for Summary Judgment* at 9.

This argument presents a logical flaw, however. For the first time, the Plaintiff presents this defect in the Original Deed as a patent defect, in what is now the second bankruptcy proceeding. During the first bankruptcy proceeding, neither the issue of ownership of the Property, nor the alleged "patent' defect in the Original Deed was raised.  Is the court to understand that the Plaintiff would allow the ownership of property, that it now argues, as part of the bankruptcy estate, to remain a question during the prior Chapter 11 filing? Or is it much more likely that the defect on the face of the Original Deed was not recognized as a defect at all by the court, the Defendant, or the Plaintiff itself until the Correction Deed was filed bringing it to the attention of the parties? This court finds the latter to be the case and finds this to further show evidence of a latent, not a patent, defect in the Original Deed.

10

The Court further finds that, at the time Plaintiff executed the Correction Deed, Plaintiff had no legal or equitable interest in the Property. A bankruptcy estate only includes Property in which the debtor had a legal or equitable interest 11 U.S.C. § 541 (the automatic stay violation alleged in this case only occurs if the alleged action relates to "property of the estate" 11 U.S.C. §362(a)(3) & (4) ).  Because plaintiff had no legal or equitable interest in the Property at the time it executed the Correction Deed, the procurement of the Correction Deed did not violate the automatic stay.

Lastly, the Court finds that no fraudulent transfer occurred in this case. In order to establish a fraudulent transfer, the Plaintiff must establish that the party "received less than a reasonably equivalent value in exchange for" the transfer of the Property allegedly made pursuant to the Correction Deed. The Plaintiff cannot establish this element of its fraudulent transfer claim as he was not paid any consideration for the Correction Deed as none was warranted.  Just as the Court noted in *Troy & North Carolina Gold Mining Company v. Snow Lumber Company*, 170 N.C. 273, 87 S.E. 40 (1915), mistakes like the one in this case are common.  The Plaintiff was not paid  for making an  accommodation to correct a common error like the one involved in this case.

## **CONCLUSION**

North Carolina case law clearly holds that the mere fact that the grantee was misidentified in the Original Deed does not "vitiate" the Original Deed. As a result, the Original Deed was effective to transfer all of Plaintiff's interest in the Property before the filing of the prior bankruptcy. Having transferred all of its interest in the Property prior to filing bankruptcy, the Plaintiff's bankruptcy estate had no interest in the Property thus making the Correction Deed neither a violation of the automatic stay nor a fraudulent conveyance under the bankruptcy code. Because the undisputed facts establish that the Correction Deed did not violate the automatic stay or constitute a fraudulent conveyance because

Plaintiff had no interest in the Property at the time it executed the Correction Deed, Defendant is entitled to summary judgment in its favor.

Accordingly, summary judgment is **GRANTED** for the Defendant. The Plaintiff shall have and recover nothing of the Defendant Plaintiff's motion for summary judgement is **DENIED**. The clerk is directed to enter judgment accordingly.

**SO ORDERED.**

**END OF DOCUMENT**